**Raymond J. DiRUSSA, Plaintiff–Appellant,**

v.

**DEAN WITTER REYNOLDS INC. and Lawrence J. Solari, Jr., Defendants–Appellees.**

No. 1430, Docket No. 96–9068.

United States Court of Appeals, Second Circuit.

Argued May 7, 1997.

Decided Aug. 5, 1997.

Bruce P. McMoran, Newark, NJ (Barry &
McMoran, John J. Barry, Colleen D. Shiarel-

la, Diane Schulze, of Counsel), for Plaintiff–Appellant.

Ronald M. Green, New York City (Epstein Becker & Green, P.C., of Counsel), for Defendants–Appellees.

Before: FEINBERG, OAKES and LEVAL, Circuit Judges.

FEINBERG, Circuit Judge:

This case implicates the possible clash between two important federal policies: deference to arbitration awards in order to promote that important method of dispute resolution and enforcement of the remedial provisions of a federal statute—the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq. Plaintiff Raymond J. DiRussa appeals from a judgment in the United States District Court for the Southern District of New York, Charles S. Haight, Jr., J., denying DiRussa's motion to vacate or modify an arbitration award to include an award of attorney's fees and granting a cross-motion by defendants Dean Witter Reynolds, Inc. (Dean Witter) and Lawrence J. Solari, Jr., a regional director at Dean Witter, to confirm the award. *DiRussa v. Dean Witter Reynolds, Inc.*, 936 F.Supp. 104 (S.D.N.Y. 1996). The district court also granted defendants' motion to seal the entire file except for the court's orders and opinions. Id. at 108. For reasons stated below, we affirm.

## I. Facts and Prior Proceedings

In May 1992, DiRussa was demoted by Dean Witter from the position of Branch Manager of its Ridgewood, New Jersey office to the position of Account Executive in the Morristown, New Jersey office. DiRussa was then 58 years old. DiRussa objected to the demotion and challenged it through arbitration before the National Association of Securities Dealers, Inc. (NASD), as required under the terms of his employment. DiRussa claimed that defendants had discriminated against him based on his age in violation of ADEA and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. 10:5–1 et seq.

As set forth in the arbitrators' award, defendants maintained that DiRussa was demoted because of (1) the poor performance of the Ridgewood branch compared to competitors in the same geographic area, (2) his inappropriate conduct with supervisors and subordinates, and (3) his failure to adequately explain to Solari and Robert Dwyer, Dean Witter's National Director of Sales, how he intended to increase his branch's performance. DiRussa countered that these reasons were pretextual, offering evidence that, despite his "competent and conscientious" performance as Branch Manager, he was demoted because of his age. DiRussa introduced testimony during the arbitration that, among other things, Solari and Dwyer "back-dated" a memorandum from them to DiRussa requesting information from DiRussa regarding improvement of his branch and surreptitiously placed that memorandum in DiRussa's personnel file without ever transmitting it to him.

In March 1995, after holding hearings on seven days between June and December 1994 at which both sides were represented by counsel, the arbitrators awarded DiRussa $200,000 in compensatory damages jointly and severally against both defendants and an additional $20,000 against Solari. Although the arbitrators acknowledged in the award that DiRussa also sought, among other things, punitive damages and "attorney's fees and costs of suit pursuant to the ADEA and NJLAD," the award explicitly denied all other relief.

In June 1995, DiRussa filed this complaint in the district court seeking to modify the award to include $249,050.10 in attorney's fees, and to increase the amount of damages awarded. Thereafter, defendants requested the district court to seal the entire file in the case, alleging that DiRussa's failure to file the action under seal violated a confidentiality agreement entered into by the parties during the course of the NASD arbitration. Despite DiRussa's objection that defendants' request went beyond the terms of the agreement, in an opinion dated July 7, 1995 (the July 1995 opinion) the district court placed the file under seal pending further order. The court ordered counsel for both sides to

"confer with each other forthwith in a good faith effort to agree upon the documents, if any, that should be retained under seal. If counsel cannot agree, defendants have the burden of demonstrating on appropriate papers that the disputed items fall within the confidentiality agreement."

After various motions and cross-motions, the district court held, in an opinion dated July 24, 1996 (the July 1996 opinion), that there was no ground on which the arbitration award could be vacated or modified to include attorney's fees or a different damage calculation. The court also ruled that the entire file would remain under seal, with the exception of the court's orders and opinions in the case, because it was "not feasible to attempt a partial unsealing within the context of the parties' confidentiality agreement." This appeal followed. In October 1996, we granted defendants' motion to seal all documents submitted in this court that were also subject to the district court's sealing order.

## II. Discussion

■ On appeal, DiRussa argues that the arbitration award should be modified to include attorney's fees and that the district court erred in sealing the file. In reviewing a district court's decision confirming an arbitration award, we review legal issues de novo and findings of fact for clear error. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995); *International Telepassport Corp. v. USFI, Inc.*, 89 F.3d 82, 85 (2d Cir.1996). We have often explained that "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (internal quotes omitted). DiRussa argues that modification of the award to include attorney's fees is warranted by both Section 10 of the Federal Arbitration Act (FAA), 9 U.S.C. § 10, and several judicially-created grounds for vacating such awards. We consider each argument in turn, but ultimately hold that the

district court did not err in confirming the award.

### A. Manifest Disregard of the Law

■ DiRussa argues that the award should be modified because the arbitrators engaged in "manifest disregard of the law" by failing to award attorney's fees under the ADEA and NJLAD. Although we have often recognized this judicially-created ground for modifying or vacating an arbitration award, e.g., *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986) (citing *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953)); *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260, 265 (2d Cir.1989), we have also emphasized that the reach of the manifest disregard doctrine is "severely limited." *Government of India v. Cargill Inc.*, 867 F.2d 130, 133 (2d Cir. 1989). Indeed, we have cautioned that manifest disregard "clearly means more than error or misunderstanding with respect to the law." *Bobker*, 808 F.2d at 933.

> The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

*Id.* Thus, to modify or vacate an award on this ground, a court must find both that (1) the "arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether," and (2) the "law ignored by the arbitrators ... [was] 'well defined, explicit, and clearly applicable'" to the case. *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir.1993) (internal citations omitted); Bobker, 808 F.2d at 933–34.

As an initial matter, DiRussa argues that the manifest disregard standard, which gives extreme deference to arbitrators, should not apply in cases where arbitrators construe federal statutes rather than decide simply the usual issues in typical commercial or labor disputes. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991)

822

(holding for the first time that ADEA claims are subject to compulsory arbitration). In support of this argument, DiRussa cites *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C.Cir.1997) (upholding order compelling arbitration of Title VII claim), in which the D.C. Circuit expressed its view that

> [t]he nearly unlimited deference paid to arbitration awards in the context of collective bargaining is not required, and not appropriate, in the context of employees' statutory claims [because] [i]n this context, the Supreme Court has assumed that arbitration awards are subject to judicial review sufficiently rigorous to ensure compliance with statutory law.

*Id.* at 1468–69; cf. *Chisolm v. Kidder, Peabody Asset Management, Inc.*, 966 F.Supp. 218, 223–28 (S.D.N.Y.1997) (discussing but rejecting argument that a "different manifest disregard standard" should apply to statutory claims). DiRussa similarly contends that a federal court has an "obligation to ensure that statutory rights ... [are] protected in the arbitral forum" and to vacate an award when arbitrators engage in an "obvious abuse of power" by denying a remedy required by statute.

■ Defendants counter that DiRussa waived this argument by not raising it in the district court. They point out that the sole issue raised in DiRussa's complaint was whether the arbitrators "acted in manifest disregard of the law in failing to award" attorney's fees. We ordinarily will not decide an issue first presented on appeal unless "necessary to avoid manifest injustice." *Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir.1994) (internal quotes omitted). We see no injustice in confining our review on appeal to the issue as framed by DiRussa in the district court.

■ We thus turn to the principal question that has been properly raised: whether the arbitrators in this case manifestly disregarded the law by not awarding attorney's fees under the ADEA and NJLAD.

(1) Attorney's Fees Under the ADEA

Section 626(b) of the ADEA, 29 U.S.C. § 626(b), incorporates by reference 29 U.S.C.

§ 216(b) of the Fair Labor Standards Act, which states, in relevant part, that "[t]he court ... *shall,* in addition to any judgment awarded to the plaintiff, ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added); see *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 86 (2d Cir.1983) (award of attorney's fees to prevailing plaintiff is mandatory). The district court found that "it is difficult to imagine a more 'well defined, explicit and clearly applicable' provision of governing law than the ADEA's mandate that successful age discrimination claimants such as plaintiff recover attorney's fees." *DiRussa*, 936 F.Supp. at 106. With this much of DiRussa's argument we agree.

However, we also agree with the district court's conclusion that the arbitrators did not manifestly disregard the law, because there is no persuasive evidence that the arbitrators actually knew of—and intentionally disregarded—the mandatory aspect of the ADEA's fee provision. The arbitrators did not state their reasons for denying DiRussa attorney's fees, nor were they required to do so. See *Standard Microsystems*, 103 F.3d at 12 (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). We are thus faced with the "difficult task" of inferring from the facts of the case whether the arbitrators "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it." *Standard Microsystems*, 103 F.3d at 12–13 (internal quotes and citations omitted).

DiRussa argues that we should assume that the arbitrators knew that the ADEA mandated attorney's fees to prevailing plaintiffs because he indicated several times during the arbitration that he was "entitled" to such fees under that statute. We observe that DiRussa stated on several occasions, including the statement of his claims that the arbitrators received into evidence at the first hearing, that he sought attorney's fees under both the ADEA and NJLAD. Similarly, DiRussa argued in his opening statement to the arbitrators, and in his "Brief in Support of [His] Application for Punitive Damages, Liq-

uidated Damages and Attorney's Fees," that he was "entitled to" attorney's fees under the ADEA.

However, DiRussa misses the point. The arbitrators obviously knew that DiRussa was requesting attorney's fees under the ADEA (and NJLAD) because they stated in their award that DiRussa sought "attorney's fees and costs of suit pursuant to the ADEA and NJLAD." Nevertheless, at no point did DiRussa communicate—either by written submission or orally—to the arbitrators that the ADEA *mandated* such an award to a prevailing party. Indeed, in what is apparently the only brief DiRussa submitted to the arbitrators regarding attorney's fees, he focused exclusively on NJLAD's provisions regarding the "lodestar" calculation of attorney's fees and whether upward enhancement of that figure was warranted. Nowhere in this submission does DiRussa either explain that the ADEA *requires* an award of attorney's fees or quote the language of the relevant ADEA section, which clearly communicates that principle. In view of DiRussa's failure to inform the arbitrators of the relevant legal standard, we are hard-pressed to infer that they consciously disregarded the ADEA's fee provisions.

DiRussa insists that his use of the phrase "entitled to" when discussing attorney's fees under the ADEA indicated to the arbitrators that they had no discretion to deny such fees. It is true that the phrase "entitled to" could convey the idea that *as a matter of law* attorney's fees were required once the arbitrators awarded DiRussa damages for age discrimination. However, it is equally plausible that the arbitrators interpreted the phrase as a statement of DiRussa's belief that the arbitrators should *exercise discretion* to award him fees because he was particularly deserving of such an award. In-

deed, it would not be surprising for them to assume this latter meaning in view of the fact that "many" statutes providing for attorney's fees to prevailing parties leave the decision whether to award such fees to the discretion of the decision-maker, in this case the arbitrators. See *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415–16, 98 S.Ct. 694, 697–98, 54 L.Ed.2d 648 (1978).

Finally, DiRussa counters that although there is no direct evidence that the arbitrators consciously ignored this provision of the ADEA, "[t]he controlling legal principle and subsequent error is so obvious to the average qualified arbitrator that any different conclusion is absurd." We disagree. We sympathize with the district court's view that "the securities industry, having persuaded the Supreme Court in *Gilmer* to require arbitration of employees' ADEA claims, should be required to supply arbitrators who know what the ADEA says about attorney's fees." 936 F.Supp. at 107. But the remedy for that does not lie with us.[1] Moreover, "knowing" all of the provisions of a particular statutory scheme without assistance from the parties is a daunting task, even for a skilled lawyer or judge. DiRussa argues that "[a] competent and conscientious panel, knowing it was being called upon to enforce federal and state anti-discrimination statutes, would be sure to review these statutes in order to ensure its compliance therewith and would request briefing from the parties on any issue on which it was unclear." While this would be a prudent course of action for arbitrators dealing with statutory claims, we agree with the district court that their failure to do so did not constitute manifest disregard of the law.

### (2) Attorney's Fees under NJLAD

We can more easily dispose of DiRussa's argument that the arbitrators manifestly dis-

---

1. We note that there has been much recent debate regarding the wisdom of the practice in the securities industry of requiring employees to arbitrate claims of employment discrimination. The NASD has formed a six-member panel to consider elimination of its requirement that all employees sign a form consenting to mandatory arbitration of such claims before an NASD-sponsored arbitration panel. Patrick McGeehan, Bias Panel Is Formed by NASD: Arbitration System to Undergo Review, Wall St. J., May 29, 1997, at

C1. Two United States Representatives, Edward Markey, D–Mass., and Constance Morella, R–Md., have introduced legislation that would preclude employers from requiring as a condition of employment arbitration of future claims of employment discrimination. John C. Coffee, Jr., Sex and the Securities Industry, N.Y.L.J., May 29, 1997, at 5–6 (also noting that SEC Commissioner Isaac C. Hunt, Jr. and the National Arbitration and Mediation Committee have spoken out against mandatory arbitration of employment discrimination claims).

regarded NJLAD's provision governing attorney's fees. Unlike the ADEA, NJLAD does not by its express terms provide for mandatory awards of attorney's fees to prevailing plaintiffs in discrimination cases. Rather, NJLAD states that "the prevailing party *may* be awarded a reasonable attorney's fee as part of the costs." N.J. Stat. Ann. § 10:5–27.1 (emphasis added). DiRussa cited this discretionary standard in his above-mentioned brief to the arbitrators on attorney's fees. In addition, immediately following citation of NJLAD in his brief, DiRussa cited *Shaner v. Horizon Bancorp.*, 116 N.J. 433, 561 A.2d 1130, 1133 (1989), for the proposition that attorney's fees were "available as a remedy" under NJLAD. This characterization communicated to the arbitrators that under New Jersey law, award of attorney's fees are discretionary, rather than mandatory as DiRussa now claims.

DiRussa responds that he also cited in that brief a case interpreting NJLAD to *require* an award of attorney's fees to a prevailing plaintiff, see *Rendine v. Pantzer*, 276 N.J.Super. 398, 648 A.2d 223 (N.J.Super.Ct.App.Div.1994), aff'd, 141 N.J. 292, 661 A.2d 1202 (1995), and that the arbitrators must have manifestly disregarded such authority. Buried at the end of the 23–page opinion in *Rendine* is a statement that the New Jersey legislature "has decided that nonprevailing defendants *must* pay 'reasonable' fees to prevailing plaintiffs." Id. at 255 (emphasis added). However, as with the pertinent ADEA principles, DiRussa did not quote that language to the arbitrators. As noted above, his brief on attorney's fees focused exclusively on the *amount* of fees to which he was entitled under NJLAD, not on the nature of his entitlement to fees in the first place. Thus, we cannot say that the arbitrators "knew of a governing legal principle yet refused to apply it or ignored it altogether." *Folkways*, 989 F.2d at 112.

### B. Other Grounds for Modification

■ DiRussa also argues that the award must be modified because by failing to award attorney's fees (1) the arbitrators "exceeded their powers" under 9 U.S.C. § 10(a)(4), and (2) the award violates public policy. Defen-dants emphasize, and DiRussa does not deny, that he did not raise these arguments in the district court. In any event, neither argument warrants modification of the arbitration award.

■ DiRussa contends that "the Panel's power and authority was defined by the ADEA (and NJLAD) and that power and authority was exceeded when the Panel, having found a violation of the ADEA, decided not to award a statutorily required remedy." This argument misapprehends the scope of § 10(a)(4). "We have consistently accorded the narrowest reading to section 10(d) [currently section 10(a)(4)], especially when it has been invoked in the context of the arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance." *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 515 (2d Cir.1991) (internal quotes and citations omitted); *Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 703 (2d Cir.1978). Our inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue. *Fahnestock*, 935 F.2d at 515–16.

■ In this case, the parties clearly submitted to the arbitrators the issue whether DiRussa was entitled to attorney's fees. Thus, though the arbitrators denied such relief, they did not "exceed their powers" as that phrase has been interpreted in our cases. Indeed, we agree with defendants that DiRussa's real objection appears to be that the arbitrators committed an obvious legal error in denying him attorney's fees. Section 10(a)(4) was not intended to apply to such a situation.

■ DiRussa also argues that enforcement of the award without modification to include attorney's fees violates public policy. The Supreme Court has instructed that a court may refuse to enforce an arbitration award on this ground only when such enforcement would "violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws

and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (internal quotes and citations omitted); *Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 844 (2d Cir.1990). This rarely-used ground for reversal "derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act." *Misco*, 484 U.S. at 42, 108 S.Ct. at 373. The party seeking to prevent enforcement of the award must "clearly show[ ]" a violation of public policy. Id. at 43, 108 S.Ct. at 374.

DiRussa claims that the award conflicts with two such policies. He first argues that awarding attorney's fees to victims of employment discrimination encourages private litigants to pursue their rights and thus contributes to the eradication of employment discrimination generally. See *Christiansburg*, 434 U.S. at 416, 98 S.Ct. at 697–98. Second, DiRussa relies on the Supreme Court's repeated statement that " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " E.g., *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652 (citing *Mitsubishi Motors Co. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989). DiRussa argues that these decisions express a public policy that arbitration awards must include all remedies mandated by statutory law.

Although we agree that the "policies" on which DiRussa relies are important, his argument misapprehends the scope of our power to vacate an award based on a violation of public policy. In *Newsday*, for instance, the arbitrators found that an employee described by the district court as a "chronic sexual harasser" had not been discharged for just cause and ordered his reinstatement. *Newsday*, 915 F.2d at 843–44. On appeal, we vacated the award because it ordered Newsday to retain the employee in violation of Title VII's strong prohibitions against sexual harassment in the workplace and "perpetuate[d] a hostile, intimidating and offensive work environment." Id. at 844–45. Other courts have vacated awards as against public policy to prevent conduct that is particularly harmful to society and egregious in nature, such as when the conduct required by the award would jeopardize public health and safety. E.g., *Iowa Elec. Light & Power Co. v. Local Union* 204, 834 F.2d 1424, 1425, 1428 (8th Cir.1987) (vacating award reinstating machinist in nuclear power plant discharged for "deliberately violating important federally-mandated safety regulations").

In contrast, DiRussa contends in effect that arbitration awards violate public policy whenever an arbitrator erroneously interprets federal statutory law. Whether to vacate an arbitration award based on this type of broadly-stated public policy poses a difficult question, and it is far from clear under the cases cited above where to draw the line in determining whether the public policy allegedly violated is important enough to require us to vacate an award. However innocent DiRussa's argument seems on its face, it could allow a court to vacate an arbitration award any time it disagreed with the arbitrator's interpretation of federal statutory law. We doubt that the Supreme Court intended to invite this type of plenary review of arbitration awards when it held in *Gilmer* that statutory claims pursuant to the ADEA were arbitrable.

The key issue is actually not whether to expand the "public policy" ground for reversal of arbitration awards but whether a standard of review less deferential than "manifest disregard" may be appropriate when certain federal statutory rights are involved, as described in our discussion in II A above. For reasons there stated, we decline to address that question in this case. On this record, DiRussa has not shown that the award clearly violates public policy.

In sum, we find no ground on which to modify the arbitration award to include attorney's fees. We emphasize that we do not condone defendants' conduct here in demoting DiRussa, nor do we applaud an arbitration award that evinces some ignorance of

the governing legal principles. However, we feel constrained by our precedents and policies regarding the limited scope of judicial review of arbitration awards to affirm the district court's order confirming the award.

## C. Sealing of the File

■ DiRussa argues that the district court erred by placing the entire file, except for the court's opinions and orders, under seal. As noted above, defendants argued that a confidentiality agreement (the agreement) entered into by the parties during the discovery phase of the arbitration required that the papers DiRussa submitted to the district court be placed under seal. The agreement provided, in relevant part, that

All documents, information and all information contained in documents produced by the parties and obtained solely by virtue of their production by an opposing party in the course of this NASD arbitration (the 'produced materials or information') shall be used only for the purpose of this NASD arbitration or any proceeding in any court of competent jurisdiction in connection with this NASD arbitration ...

The agreement also stated that produced materials or information could be disclosed to courts "as may be required in connection with this NASD arbitration, *provided* that such papers are filed under seal or partial seal, as necessary, to protect the confidentiality of the produced materials or information."

In its July 1995 opinion, the district court held that, as DiRussa argues, the agreement was "narrowly drawn" to protect only information " 'produced by the parties *and* obtained solely by virtue of their production by an opposing party in the course of' the NASD arbitration." (emphasis added). However, the court stated that it could not determine on the record before it whether the papers DiRussa had filed contained such information. Thus, to "safeguard such confidential material as may exist," the district court sealed the record and ordered the parties to attempt to agree as to which documents properly fell within the protection of the agreement. The court cautioned, however, that in the event the parties could not agree, defendants had the "burden of demon-

strating on appropriate papers that the disputed items f[ell] within the confidentiality agreement."

Ultimately, in its July 1996 opinion denying modification of the arbitration award, the district court held that the file would remain under seal with the exception of the court's orders and opinions in the case. 936 F.Supp. at 108. The district judge explained that he "agree[d] with defendants that it [was] not feasible to attempt a partial unsealing within the context of the parties' confidentiality agreement." *Id.*

The Supreme Court has explained that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1313, 55 L.Ed.2d 570 (1978); cf. *United States v. Amodeo*, 71 F.3d 1044, 1053 (2d Cir.1995) (holding that district court abused its discretion by unsealing record). We hold that the district court did not abuse its discretion in sealing the file pursuant to the confidentiality agreement.

■ Many cases have recognized that the public has a "common-law right of access" to judicial records. E.g., *Nixon v. Warner Comm., Inc.*, 435 U.S. at 597–99, 98 S.Ct. at 1312–13; *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir.1994) (identifying "strong presumption of public access to court records"). The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action, in this case defendants. See *Amodeo*, 71 F.3d at 1047; compare *In re "Agent Orange" Prod. Liab. Litigation*, 821 F.2d 139, 145 (2d Cir.1987) (under FRCP 26(c), party seeking protective order for discovery has the burden of showing good cause for issuance of the order).

Defendants argue that no presumption of access attached to any of the documents filed in the district court because "[d]ocuments that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely

beyond the presumption's reach, ... and stand[ ] on a different footing than ... any other document which is presented to the court to invoke its powers or affect its decisions." *Amodeo*, 71 F.3d at 1050 (internal quotes and citations omitted). Defendants maintain that most of the documents DiRussa submitted in the district court were at best "on the periphery of the adjudicatory process," see *id.* at 1051, allegedly because they were not relevant to the question whether the arbitration award could be modified to include attorney's fees. We need not reach this issue, however, because even assuming some presumption of access attached to these documents, we hold that the district court did not abuse its discretion in entering the final sealing order.

As DiRussa apparently concedes, the district court recognized the relevant legal principles by stating that "good cause must be shown for departing from [the] tradition" of allowing public inspection of case files, and explicitly placing on defendants the burden of showing that the documents fell within the agreement. Moreover, the district court interpreted that agreement "narrowly," presumably so that only documents in which the parties had a legitimate confidentiality interest would be sealed. DiRussa nevertheless argues that (1) defendants failed to sustain their burden of proving that the entire file should remain under seal, and (2) the district court improperly failed to independently scrutinize the over–2000 page record in this case to determine the proper scope of the sealing order. We reject both contentions.

Defendants offered proof in the district court that DiRussa obtained certain documents solely from defendants and consequently that these documents and any references to information contained in them should be sealed pursuant to the agreement. In a letter to DiRussa dated July 20, defendants observed that at least six documents filed by DiRussa bore a stamp reflecting that DiRussa obtained them from defendants and insisted that DiRussa had indisputably obtained from them certain other documents, including an affidavit of Dean Witter's Senior Vice President and Associate General Counsel. In a brief in opposition to DiRussa's motion to modify the arbitration award, defendants alleged that "it is quite simply inconceivable" that DiRussa obtained certain other documents, including defendants' damage calculations, from any source other than from defendants during the arbitration. In that brief, defendants suggested that the district court direct DiRussa to state in an affidavit where he obtained documents filed with his complaint because it was "impossible for defendants to definitively state where plaintiff obtained" any of those documents. Finally, defendants argued that because DiRussa referred to documents protected by the agreement "repeatedly and regularly throughout each of the documents on file with the Court," partial sealing would be impractical.

DiRussa insists that "the trial court—not the parties themselves—should scrutinize every ... [confidentiality] agreement involving the sealing of court papers and what, if any, of them are to be sealed, and it is only after very careful, particularized review by the court that a Confidentiality Order may be executed." *City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991); see *In re Orion*, 21 F.3d at 24. Although we agree that a district court must carefully evaluate requests to seal documents with a view towards the presumption of access to judicial records, we do not see how the district court could have independently determined without DiRussa's assistance (which has not been brought to our attention) where he obtained each document.

Finally, DiRussa raises a concern that the sealing order hinders exposure of the "acts of a violator of federal discrimination law to public scrutiny." However, the opinions of both this court and the district court, which are not under seal, discuss the facts underlying DiRussa's termination and clearly indicate that the arbitrators found that defendants discriminated against DiRussa based on age. Moreover, the arbitration award is available to the public on Westlaw. *DiRussa v. Dean Witter Reynolds, Inc.*, No. 92–4232, 1995 WL 226601 (N.A.S.D., March 14, 1995). Under all the circumstances, we cannot say that the district court abused its discretion in

sealing the file, except for the court's orders and opinions in this case.

We affirm the decision of the district court.