LEW LIEBERBAUM & CO., INC. n/k/a First Asset Management, Inc., Mark Lew, Sheldon Lieberbaum, and Leonard Neuhaus, Petitioners,

v.

E. Tate RANDLE, Gail G. Randle, and William Winters, Respondents.

No. 99–CV–4358 (ADS).

United States District Court, E.D. New York.

Feb. 8, 2000.

Isaac M. Zucker, New York City, for petitioners.

Wexler & Burkhart P.C., Mitchel Field, NY by Michael P. Gilmore, for respondents E. Tate Randle and Gail G. Randle.

William Winters, No appearance, for respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court are motions by each of the Petitioners to vacate an arbitration award against them issued by the National Association of Securities Dealers, and a cross-motion by the Respondents, Tate and Gail Randle ("the Randles"), to confirm that award.

## BACKGROUND

In November 1991, the Randles were contacted by Respondent William Winters, a broker with Petitioner Lew Lieberbaum & Co., and solicited to invest monies with the company. In December 1991, the Randles transferred $48,012 in assets to the Florida office of Lew Lieberbaum & Co. for Winters to oversee. Winters purchased about $36,000 worth of shares in a stock called Action Products, Inc. on behalf of the Randles from December 1991 through February 1992. The Randles allege that some of those purchases were fraudulently billed to their account but that no stock was ever transferred. By March of 1992, the Action Products stock had dropped significantly in value.

The Randles contacted Winter, who assured them that Lew Lieberbaum & Co. had a significant investment in Action Products and that the stock price would recover. In April 1992, Winter moved to another branch, and the Randles contacted his new branch manager to discuss, among other things, allegations by Winter that his former branch manager was engaging in fraudulent conduct involving investors. On April 20, 1992, Petitioner Leonard Neuhaus, a Lew Leiberbaum & Co. official, called the Randles to discuss the Action Products stock and Winters' allegations. The next day, Neuhaus called the Randles again, stating that he had spoken to Petitioners Mark Lew and Sheldon Lieberbaum; that they would investigate the problems; that he would personally oversee the Randles' account; and that he would work with Winters on recovering the Randles' lost money. In the meantime, Neuhaus encouraged the Randles to leave their money with Winters, and stated that by September 1, 1992, the Randles' account would be back to its original balance. By May of 1992, Winters had sold all of the Randles' stake in Action Products for a net loss of $22,687.

Shortly thereafter, Winters arranged for the Randles' assets to be transferred to what was apparently another brokerage, although he did not inform the Randles of that fact. By September 1992, the Randles contacted Neuhaus to inquire why their balance had not returned to its original balance. Neuhaus explained that he had not actually been personally overseeing their account and stated that there was nothing he could do. The Randles also contacted Sheldon Lieberbaum, who promised to look into the matter and get back to them, but never did.

On December 7, 1997, the Randles filed a statement of claim with the National Association of Securities Dealers, requesting arbitration of their claims against the Petitioners and Winters. Their claim, apparently drafted *pro se*, did not set forth any specific legal theories, but merely recited the chronology described above. On October 7, 1998, the Randles withdrew their claim against Winters in exchange for his agreement to testify regarding his knowledge of the facts at the hearing. The Petitioners then filed a third-party claim against Winters, seeking to hold him partially or totally responsible for the Randles' losses. The Petitioners filed prehearing motions to dismiss the case on several grounds, but the arbitration panel denied them in their entirety. Following hearings on March 16 and 17, 1999, the panel found in favor of the Randles and awarded them $53,352 in actual damages against each of the Petitioners jointly and severally. The panel also denied the Petitioners' third-party claim against Winters.

Petitioners now move under the provisions of 9 U.S.C. § 10 to vacate the award on four grounds: (i) that the Panel's decision incorrectly held the Petitioners liable despite the absence of evidence that they participated in any wrongdoing; (ii) that the Panel erred in holding that claims against the Petitioners were timely; (iii) that the Panel incorrectly charged the Petitioners with damages for trading losses incurred by the Randles after Winters had transferred their account to the independent brokerage; and (iv) that the Panel erroneously denied the Petitioners' third-

party claim against Winters. The Randles cross-move to confirm the award.

### *DISCUSSION*

■ The party moving to vacate an arbitration award has the burden of proof. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corporation,* 103 F.3d 9, 12 (2d Cir.1997). Under federal law, a court's review of arbitration awards is "very limited ... in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997); *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir. 1993). Accordingly, the burden on the party seeking to vacate the award is a heavy one. *Id.; citing Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987). An arbitrator's decision may be vacated, however, where the award is in "manifest disregard of the law." *Id.; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986).

■ Proving "manifest disregard" means more than simply showing that the arbitrator made an error or misunderstood the law. *Bobker, 808 F.2d at 933.* A person seeking to vacate an award for manifest disregard must show that the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir.1997). Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. *Id.* Thus, to modify or vacate an award on this ground, a court must find both that (1) the "arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether," and (2) the "law ignored by the arbitrators ... [was] 'well defined, explicit, and clearly

applicable'" to the case. *Id.; citing Folkways,* 989 F.2d at 112.

■ Where, as here, an arbitrator has not set forth the specific rationale supporting the decision, the Court may confirm an award if "a ground for the arbitrator[s] decision can be inferred from the facts of the case." *Standard Microsystems,* 103 F.3d at 13. If there is "even a barely colorable justification for the outcome reached," or even if the award is tainted by errors of fact or law that do not rise to the level of manifest disregard, the court must confirm the arbitration award. *Id.* at 14.

Here, the Petitioners contend that the arbitration panel deliberately overlooked the law that generally insulates officers of a brokerage from vicarious liability for their agents' acts; failed to apply the proper statute of limitations; and incorrectly attributed damages to them that they did not cause. The Petitioners' efforts to argue that the panel disregarded a "clearly governing legal principle" are substantially hampered by their failure to supply the Court with a transcript of the tape recorded proceedings. Other than the panel's award, the Petitioners have only supplied the Court with the Petitioners' counsel's self-serving summary of the testimony in his supporting affidavit. The lack of a sufficiently complete record alone is enough to require rejection of the Petitioners' position. It is the Petitioners' burden to demonstrate manifest disregard of the law, and the failure to offer the entire record leaves the Court unable to exclude the possibility that the award is supported by evidence that the Petitioner has not supplied. *See Commonwealth Associates v. Letsos,* 40 F.Supp.2d 170, 174 (S.D.N.Y. 1999).

Nevertheless, the Court finds that, on the face of the limited record before it, the Petitioners have failed to carry their burden of showing any "manifest disregard."

## A. As to the finding of individual liability

The Petitioners contend that they cannot be held liable for Winters' actions involving the Randles' account because "a person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability," *citing Hemming v. Alfin Fragrances, Inc.*, 690 F.Supp. 239, 245 (S.D.N.Y.1988), and because the Randles did not show that the Petitioners had a direct involvement with Winters' acts. Their argument derives from the "control person" defense in Section 20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t(a), which states that

> every person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be jointly and severally liable with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

■ Even in the absence of a transcript, it is clear from the panel's decision that there was a sufficient basis to hold Neuhaus liable to the Randles, since the evidence shows that he was directly involved in their loss. According to the Randles' complaint, they informed Neuhaus of Winters' actions, and Neuhaus promised to take personal oversight of their account and recover their money, but never took any action on his promises. Based upon Neuhaus' assurances, the Randles left their money with Lew Lieberbaum & Co., where Winters eventually squandered ·it. This would certainly suffice to establish Neuhaus' meaningful participation in the events that caused the Randles' losses, or, at the very least, prevent Neuhaus from proving the essential element of "good faith" to establish a "control person" defense.

■ As for Petitioners Lew and Lieberbaum, the Court agrees that the bare assertions in the Randles' complaint do not demonstrate their personal participation. However, as discussed above, the absence of a transcript prevents the Court from definitively finding that, at the hearing, Lew and Lieberbaum carried their burden of establishing a "control person" defense to joint and several liability. Moreover, the Court finds that the "control person" defense would only protect Lew and Lieberbaum from liability from claims under the Securities and Exchange Act, not from tort claims for fraud, negligent misrepresentation, and similar claims that are governed by different standards of joint or vicarious liability. As stated above, where the arbitrator does not set forth the basis for his findings, the court may infer whether *any* colorable claim can be supported by the evidence. *See e.g. Westmoreland Capital Corp. v. Findlay*, 916 F.Supp. 242, 247 (W.D.N.Y.1996) ("the NASD Code provides for arbitration of '*any dispute,* claim or controversy ...,'" not just disputes arising under securities laws) (emphasis added).

Here, the Randles apparently introduced into evidence an administrative finding by the State of Florida, which found the all of the Petitioners guilty of market manipulation, sale of unsuitable securities, concealment of facts, and failure to adequately supervise their employees in the Florida branch office from 1991 to 1992. Without knowing anything more about the testimony that was adduced at the hearing, the arbitration panel might have relied upon this evidence to support a finding that all of the Petitioners were actively involved in a scheme to promote unsuitable stocks like Action Products to clients in Florida, including the Randles. Such active participation would defeat the "control person" defense under the Securities and Exchange Act, and could constitute a separate, actionable tort for fraud or negligent misrepresentation. At the least, the Florida administrative finding would support a cause of action for negligent supervision

against Petitioners Lew and Lieberbaum, as the administrative citation clearly establishes that Lew and Lieberbaum were aware of the fraudulent acts taking place in the Florida office. *New York Islanders Hockey Club LLP v. Comerica Bank*, 71 F.Supp.2d 108, 119 (E.D.N.Y.1999). These tort actions would expose Lew and Lieberman to joint and several liability regardless of whether their "control person" defense was valid. *U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir.1993) (finding joint and several liability for joint tortfeasors).

Therefore, the Petitioners have failed to carry their heavy burden of showing manifest disregard of the "control person" defense.

### B. As to the statute of limitations defense

The Petitioners contend that the Randles' allegations are untimely, given the hybrid one-year/three-year statute of limitations applying to Securities and Exchange Act claims. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The Randles began incurring losses when Winters sold their Action Products stock at a loss in the Spring of 1992, and eventually filed their demand for arbitration nearly six years later in December 1997.

While the Petitioners' argument might be sufficient to defeat claims under the Securities Act as untimely, they fail to address the timeliness of any of the other potential claims that the facts could have supported. For example, a claim for fraud under New York State law is governed by a six-year statute of limitations. N.Y. CPLR § 213(8). It is possible to infer from the scant evidence in the record before this Court that the arbitration panel found that the Randles had presented a timely claim for fraud under New York State law, and decided the case in their favor on that ground or on some other timely cause of action.

■ Moreover, the Petitioners' motion to dismiss before the arbitration panel contains no discussion of any statute of limitations defense. While the Petitioners cite the arbitration panel's failure to discuss the statute of limitations issue in their decision as evidence of the panel's manifest disregard of the issue, the absence of any indication in the record that the Petitioners expressly presented any arguments on the timeliness defense actually works against them. In *DiRussa*, 121 F.3d at 822, the Second Circuit refused to vacate an arbitral decision that failed to award attorney's fees to a prevailing plaintiff in an age discrimination case. Although the court found that the governing law was clear that the plaintiff was entitled to a fee award, the fact that the plaintiff had not brought that governing law to the attention of the arbitrator prevented the court from finding that the arbitrator *knowingly* disregarded the law. *Id.* The same rationale applies here; in the absence of evidence that the Petitioners argued a statute of limitations defense to the arbitration panel, this Court cannot find that the panel knowingly disregarded the applicable law of the statute of limitations.

Therefore, the Court finds that the Petitioners have not established that the panel's decision that the claims were timely evidences a manifest disregard of that law.

### C. As to the calculation of damages

Next, the Petitioners argue that the award of $53,352 in actual damages was improper, because it reflected losses from trades made after Winters transferred the Randles' money into an account at an entirely different brokerage.

■ The Petitioners' arguments here suffer from two crippling flaws. The first is their failure to point to any "governing legal principle" that the arbitration panel disregarded. The Petitioners' brief on this point cites a single case for the proposition that the court must be able to infer a basis for the award from the arbitrator's deci-

sion. *See e.g. Standard Microsystems, supra.* Even accepting the Petitioners' argument that a brokerage cannot be liable for trades made after the brokerage's agent transferred a client's account to a different brokerage, the Court cannot find that this principle is "clearly applicable" to this case. The panel could easily have found the Petitioners to have been negligent in supervising Winters, and thus, they may be held liable for all of the damages reasonably forseeable and proximately caused by that negligence, including Winters' piracy of the Randles' money. *See e.g. Woodling v. Garrett Corp.*, 813 F.2d 543, 555–56 (2d Cir.1987) (original tortfeasor is liable for acts proximately caused by his negligence despite intervening tort by a third party if third party's acts were foreseeable). Here, the Randles' complaint indicates that they informed Neuhaus, and Neuhaus informed Lew and Lieberman, of the improprieties going on in the Florida office. The Court here cannot say that it would not be foreseeable to the Petitioners that a member of the Florida office might engage in this kind of fraudulent conduct with a client's money.

In addition, there is no reason to necessarily conclude that the panel's award to the Randles included damages for trades made after the funds were transferred from Lew Lieberbaum & Co. The Randles' complaint sought $22,687 in losses from the Action Products trades, and interest at a rate of 18%. Nothing in the record before this Court indicates that the Petitioners objected to the arbitration panel's consideration of pre-award interest or the rate demanded by the Randles. Assuming the arbitrators awarded the damages requested in full on the Action Products transactions only, the amount of $22,687 in damages from the Action Products trades would be increased by approximately $29,215 in simple interest over the five year period from the time Winters sold the Action Products stock to the hearing date, yielding a total sum of $51,902. Given the deference to arbitration awards by the courts, this figure is sufficiently close to the $53,352 actually awarded by the panel so as to defeat any claim by the Petitioners that the panel must necessarily have included the non-Lew Lieberbaum & Co. trades in fixing the damage award.

As such, the Petitioners have failed to show that the panel disregarded any controlling law in calculating the Randles' damages. The Court finds that the Petitioners have failed to carry their burden of showing that the award to the Randles was the result of manifest disregard of any controlling law. Having failed to carry their burden of proof to vacate the award, the Petitioners' motion to vacate is denied, and the Randles' cross-petition to confirm the award is granted.

### D. As to the third-party claim against Winters

The Petitioners' final argument is that the panel erred in dismissing their third-party complaint against Winters. That complaint alleged that Winters' wrongful acts took place in violation of Lew Lieberbaum & Co. policies, and were thus outside the scope of his employment.

Once again, the lack of any record showing the evidence adduced at the hearing prevents the Court from finding that the panel disregarded any governing law in dismissing the third-party complaint. Nothing in the record before this Court demonstrates that Winters violated any Lew Lieberbaum & Co. policies in any way; indeed, the record before this Court contains no indication that any policies whatsoever exist at Lew Lieberbaum & Co.

Moreover, it is significant that the Florida administrative citation found that the Petitioners were part of a scheme with the Florida branch office—the office where Winters worked—to fraudulently manipulate the market price of a stock that Lew Lieberbaum & Co. was selling to its clients. If the panel found that the Petitioners had fraudulently manipulated the market value of the Action Products stock, as did the State of Florida, it clearly could have found that the Randles' losses were

due entirely to the Petitioners' actions, or that Winters undertook his wrongful acts only at the Petitioners' directions. In the absence of any evidentiary record or any reasoning by the arbitration panel, this Court need merely come up with a barely colorable rationale for the arbitration panel's decision in this regard. The scenario described above is sufficient.

Thus, the Petitioners' motion to vacate the dismissal of their third-party complaint is denied.

### CONCLUSION

For the foregoing reasons, the Petitioners' motion to vacate the arbitration award is DENIED, and the Respondents' cross-motion to confirm the award is GRANT-ED. The award is confirmed in all respects. The Clerk of the Court is directed to enter a judgment in favor of the Respondents against the Petitioners in the amounts indicated in the arbitration award. The Clerk is further directed to close this case.

**SO ORDERED.**