**BEAR, STEARNS & CO., INC., BEAR,
STEARNS SECURITIES CORP., and
Richard Harriton, Plaintiffs–Appel-
lees,**

**v.**

**1109580 ONTARIO, INC., Defendant–
Appellant.**

**Docket No. 04–3632–CV.**

United States Court of Appeals,
Second Circuit.

Argued: April 18, 2005.

Decided: May 25, 2005.

Harold J. Ruvoldt, Cathy Fleming, Savitha Keesari Masson, Edwards & Angell, LLP, New York, New York, for Plaintiffs–Appellees.

Stuart L. Melnick, Law Offices of Stuart L. Melnick, LLC, New York, New York, for Defendant–Appellant.

Before: OAKES, JACOBS, STRAUB, Circuit Judges.

JACOBS, Circuit Judge.

An entity called 1109580 Ontario, Inc. ("Ontario") appeals from a judgment entered in the United States District Court for the Southern District of New York (Stein, *J.*), confirming an arbitration award against Ontario and denying Ontario's motion to vacate the award on the ground that the arbitrators' refusal to enforce col-

lateral estoppel (on the basis of a previous arbitral decision) constituted manifest disregard of the law. We affirm.

## I

In February 1997, Ontario instituted an arbitration before the National Association of Securities Dealers, Inc. ("NASD") against Bear Stearns & Co., Inc., Bear Stearns Securities Corp., and Richard Harriton, a Bear Stearns Securities Corp. executive [1] (collectively "Bear Stearns"). The arbitration arose out of a massive securities fraud perpetrated by A.R. Baron & Co. ("Baron") in the 1990s; Bear Stearns was Baron's clearing broker. The facts involved in the underlying fraud, and Bear Stearns' involvement, have been litigated at length and need not be repeated here. *See, e.g., McDaniel v. Bear, Stearns & Co.,* 196 F.Supp.2d 343 (S.D.N.Y.2002); *Berwecky v. Bear, Stearns & Co.,* 197 F.R.D. 65 (S.D.N.Y.2000); *Schwarz v. Bear Stearns & Co.,* 266 A.D.2d 133, 698 N.Y.S.2d 855 (1st Dep't 1999). Ontario's NASD claim sought $22 million in compensatory damages and millions more in punitive damages on five claims. The arbitrators ruled entirely in favor of Bear Stearns. Bear Stearns moved in the Southern District to confirm the award, and Ontario cross-moved to vacate. On May 18, 2004, the district court confirmed the award and rejected the cross-motion.

The only claim implicated by this appeal is that Bear Stearns aided and abetted Baron. Ontario's sole argument on appeal is that Bear Stearns was collaterally estopped from denying liability because it had lost another arbitration conducted before another NASD panel, and that the arbitrators' ruling otherwise amounted to manifest disregard of the law.

Ontario's arbitration against Bear Stearns was commenced on February 18, 1997. Soon afterward, it was stayed (along with others like it) pending investigation by the New York County District Attorney and the United States Securities and Exchange Commission ("SEC") into Bear Stearns' role in the Baron fraud. After Bear Stearns reached a settlement with the SEC regarding its role as Baron's broker, the Ontario arbitration resumed.

In July, 2001 (while the Ontario arbitration was pending), another NASD panel ruled in the case of *McDaniel v. Davis* that Bear Stearns had rendered "active participation, substantial assistance and aiding and abetting" to Baron's fraud, and that Bear Stearns breached its duty of good faith by failing to honor McDaniel's request to transfer the McDaniel account to a broker other than Baron. This arbitral award was reluctantly approved by the district court: "If I had that authority, I might indeed have decided the case differently. However the court's review of an arbitration award is rigidly narrow." *McDaniel v. Bear Stearns & Co., Inc.,* 196 F.Supp.2d 343, 346 (S.D.N.Y.2002).

In August 2001, Ontario gave the arbitrators a copy of the *McDaniel* panel decision and argued:

> [T]he *McDaniel* case arises out of or is predicated upon the same set of operative facts at issue in the subject arbitration and involves the same Respondents (or at least certain of them), the same or substantially similar causes of action and the same defenses.

Ontario requested that the *McDaniel* findings "be adopted, in whole or in part, by the Panel in this case." That request was

---

**1.** As the only issue on appeal is the estoppel effect of a given case involving only Bear Stearns & Co., Inc. and Bear Stearns Securi-

ties Corp., Richard Harriton, though named, is not properly implicated in this appeal.

denied without prejudice in September 2001.

In January 2002, shortly following the district court's enforcement of the *McDaniel* panel decision and just before hearings began in the Ontario arbitration, Ontario again asked the panel to adopt the *McDaniel* findings of fact, noting that the district court opinion in *McDaniel,* "principally [the] discussion and repudiation of the defenses asserted by the respondents, may likewise be sufficient to collaterally estop [Bear Stearns] from relying upon those very same defenses in the course of this arbitration." Ontario expressed willingness to brief the issue if "the panel deem[ed] it necessary or appropriate." In April 2002, the panel ruled that "[t]he *McDaniel* decision should be delivered to the Panel as an attachment to a brief and not as documentary evidence."

Evidently dissatisfied with the arbitration, Ontario filed an action in federal court in September 2002. The arbitration was again stayed. In February 2003, the district court granted Bear Stearns' motion to dismiss the action pending resolution of the arbitration. *1109580 Ontario, Inc. v. Bear, Stearns & Co.,* 2003 WL 470308, (S.D.N.Y. Feb.25, 2003).

On April 15, 2003, Ontario made a detailed motion, relying on *McDaniel,* to collaterally estop Bear Stearns on its liability for "(a) having aided and abetted Baron's massive criminal fraud and (b) for having breached the Customer Agreement with Ontario." In June 2003, the panel denied the motion.

In arbitration and in the district court, Bear Stearns argued against collateral estoppel by *McDaniel* on the ground (among others) that two *other* NASD panel decisions arising out of the Baron scandal were resolved in favor of Bear Stearns. As Ontario emphasizes, both those decisions were rendered after *McDaniel.* The first, *Holubowich,* was decided in March 2002, several months after Ontario first asked the arbitrators to adopt *McDaniel*'s factual findings, and two months after Ontario first spoke the word "estop" to the arbitrators, but (notably) before Ontario's collateral estoppel motion. The second, *Meere,* was decided in early April 2003, at about the same time as Ontario's collateral estoppel motion.[2] The panel was made aware of both decisions in April 2003 by Bear Stearns' answer to Ontario's estoppel motion.

After the estoppel motion was denied, Ontario ended its active contest in the arbitration, and quickly rested, in order (Ontario explains) to avoid a *de minimis* award that would have precluded a court challenge. Blue 13–15. The arbitrators ruled in favor of Bear Stearns in December 2003. The district court affirmed the award in May 2004 by written opinion. *Bear Stearns & Co. v. 1109580 Ontario, Inc.,* 318 F.Supp.2d 199 (S.D.N.Y.2004).

## II

Arbitration awards are reviewed for "manifest disregard of the law." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 28 (2d Cir.2000). This review is "severely limited." *Id.* To vacate an arbitration award, a reviewing court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it all together, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.1997) (internal quotation marks and alterations

---

**2.** The dates the arbitrators signed the decision are all prior to the filing of Ontario's motion to estop; the date of service on the decision is after.

omitted). The panel in this case gave no explanation for its denial of Ontario's motion to apply collateral estoppel. No such explanation is required, however. *See Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir.1997). Absent an explanation, the reviewing court must attempt to infer from the record whether the arbitrators appreciated and ignored a clearly governing legal principle. *See id.* at 12–13. The arbitration decision must be confirmed if there is any basis for upholding the decision and "[i]f there is even a barely colorable justification for the outcome reached." *Id.* at 13 (internal quotation marks omitted). This court reviews *de novo* the district court's determination of whether the arbitrators acted in manifest disregard of the law. *Greenberg*, 220 F.3d at 28.

■■ An arbitration decision may effect collateral estoppel in a later litigation or arbitration if the proponent can show "with clarity and certainty" that the same issues were resolved. *Postlewaite v. McGraw–Hill, Inc.*, 333 F.3d 42, 49 (2d Cir.2003) (quotation and emphasis omitted). Collateral estoppel is permissible as to a given issue if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir.1997) (internal quotation marks omitted).[3]

■■ These four factors are required but not sufficient. In addition, a court must satisfy itself that application of the doctrine is fair. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Labs. Inc. v. Univ. of Ill.*, 402 U.S. 313, 325, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Here, Ontario interposes *McDaniel* to prevent Bear Stearns from defending itself on several issues that Bear Stearns has previously litigated but Ontario has not; that is, Ontario seeks to employ collateral estoppel offensively. *See Parklane Hosiery*, 439 U.S. at 329, 99 S.Ct. 645 (defining offensive collateral estoppel). "Allowing offensive collateral estoppel may … be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.* at 330, 99 S.Ct. 645. An instructive hypothetical is propounded in *Parklane Hosiery:* if a railway accident injured 50 people, and the first 25 people who sued the railroad lost, and the 26th person won, the remaining plaintiffs ought not be able to win by estoppel. *Id.* at 330 n. 14, 99 S.Ct. 645 (*citing* Restatement (Second) of Judgments § 88(4)). If "application of offensive estoppel would be unfair to a defendant," for this or several other reasons, the doctrine should not be applied. *Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. 645.

■ This court has been careful to assure that collateral estoppel is not employed unfairly. *See Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir.1995). Moreover, an adjudicator is generally accorded "broad discretion" in determining

---

**3.** It is not clear that federal law on collateral estoppel is controlling, because it appears likely that New York law should have governed the arbitration. However, both parties cited federal law to the arbitrators as controlling precedent; both parties rely on federal law on appeal; and no one argues that the application of state law would have made a difference. Therefore, we need not decide what would happen if a panel ignored noncontrolling law on which both parties nevertheless agreed.

whether or not collateral estoppel should apply in a given case. *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. 645; *see also Remington Rand Corp.,* 68 F.3d at 1486 (explaining that adjudicators are "generally accorded wide discretion to determine when offensive collateral estoppel should be applied").

■ Manifest disregard occurs only when arbitrators have ignored well defined and clearly applicable law; it is not enough to demonstrate that the arbitrators have erred. *See DiRussa,* 121 F.3d at 821; *Willemijn,* 103 F.3d at 12–13. Ontario's appeal thus runs up against the deference afforded arbitrators under the "manifest disregard" standard as well as the "broad discretion" generally given adjudicators in determining whether collateral estoppel is fair. We assume without deciding that an arbitration panel could manifestly disregard the law by denying a motion that is addressed to its discretion and that is subject to considerations of fairness.

The district court concluded as to the aiding and abetting claim that the four necessary *Interoceanica* factors were present, but that the arbitrators' decision to deny the motion for collateral estoppel was supportable as a matter of fairness. *See Bear Stearns & Co. v. 1109580 Ontario, Inc.,* 318 F.Supp.2d 199, 204–05 (S.D.N.Y. 2004). The parties are content to argue the appeal on that ground.

The panel's denial of Ontario's motion for collateral estoppel did not amount to manifest disregard of the law. In view of differing results reached by different panels, the arbitrators had discretion to apply collateral estoppel or not. Further, courts generally look to the more recent of inconsistent results, *see Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir.1992), in this case those favoring Bear Stearns. Ontario argues chiefly that *Holubowich* and *Meere* have no countervailing weight

in fairness because those decisions are vague and unreasoned and because they postdate *McDaniel* and Ontario's invocation of *McDaniel* to the panel.

Ontario urges that the *Holubwich* and *Meere* decisions are so vague that no conflict with *McDaniel* can be apparent. Each arbitration raised similar claims arising out of the same Baron fraud, and each award recited the claims of the parties and the outcome of the arbitration without prolonged explication. The *Holubwich* panel expressly considered and rejected an aiding and abetting claim, and discussed the prior ruling in *McDaniel.* The *Meere* decision is less informative, and does not appear on its face to involve an aiding and abetting claim.

Ontario argues therefore that the *Holubwich* and *Meere* awards are insufficient to support offensive estoppel. That may be so as far as it goes. But it does not follow, as Ontario contends, that the two awards are insufficient to defeat collateral estoppel based on *McDaniel* as a matter of fairness. The Ontario case is close enough to *Holubwich* and *Meere*—and to *McDaniel*—that an arbitration panel could in its discretion decide (without manifest disregard) that Bear Stearns was not definitely the loser in the controversy and that given the course and outcome of prior cases it would be unfair to rule on the basis of collateral estoppel rather than consideration of the merits. *See Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. 645.

Ontario contends that even if *Holubowich* and *Meere* are deemed favorable to Bear Stearns (and therefore "inconsistent" with *McDaniel*), they are not "previous judgments" because they were decided subsequent to *McDaniel,* and because they were decided months after Ontario alerted the panel to the *McDaniel* decision. We disagree. First, as noted earlier, the

greatest weight generally is given to the most recent case, *see Metromedia Co.*, 983 F.2d at 366, and Ontario offers no authority or reason for the proposition that an adjudicator should ignore inconsistent decisions where a motion for collateral estoppel is based on the first case to address an issue. Second, although Ontario called the panel's attention to *McDaniel* in August 2001, and suggested that it might be preclusive in January 2002, Ontario did not make a motion to preclude until April 2003, by which time *Holubowich* and *Meere* had been decided.[4]

Only after a panel has been presented with binding authority in a way that compels relief can it be said that the panel exhibited manifest disregard of the law. *See DiRussa*, 121 F.3d at 821. "The party asserting collateral estoppel bears the burden of demonstrating that it is entitled to this relief." *May Ship Repair Contracting Corp. v. Barge Columbia New York*, 160 F.Supp.2d 594, 599 (S.D.N.Y. 2001) (*citing In re Sokol*, 113 F.3d 303, 306 (2d Cir.1997)). Ontario's bare reference to *McDaniel* (in 2001, prior to any potentially contrary award) did not amount to an argument for estoppel. Ontario's first reference to estoppel (in January 2002) was insufficient to compel relief because it did not furnish the binding authorities and argue affirmatively for relief. *See DiRussa*, 121 F.3d at 821.

By the time Ontario sought relief and invoked controlling law on collateral estoppel, *Holubowich* and *Meere* had been added to *McDaniel* as "previous judgments" within the meaning of *Parklane*.

Even assuming that an arbitral panel can manifestly disregard the law by denying a motion that is addressed to its dis-

cretion and that is subject to considerations of fairness, the panel here did not offend the law. The judgment of the district court enforcing the arbitration award is affirmed.

---

4. The record does not support Ontario's contention that the panel was so hostile that it in effect suppressed a prompt motion for relief.