**COMMERCIAL UNION INSURANCE COMPANY, Petitioner,**

v.

**David E.W. LINES, Peter C.B. Mitchell, Christopher J. Hughes, as Joint Liquidators of Electric Mutual Liability Insurance Company, Limited (in Liquidation), Respondents.**

**No. 02 CIV.0573 RMB.**

United States District Court, S.D. New York.

Dec. 18, 2002.

Order Denying Motion to Amend Dec. 26, 2002.

John Finnegan, Cadwalader, Wickersham & Taft, New York City, for plaintiff.

Joanna Shally, Shearman & Sterling, LLP., New York City, for defendant.

## ORDER

BERMAN, District Judge.

## I.  Introduction

On October 31, 2001, a three-member arbitration panel ("Panel") rendered an award ("Award") in a proceeding between Commercial Union Insurance Company ("Petitioner" or "Commercial Union") and David E.W. Lines, Peter C.B. Mitchell, and Christopher J. Hughes (collectively, "Respondents"), the joint liquidators of Electric Mutual Liability Insurance Company, Ltd. (in Liquidation) ("EMLICO").[1,2]

---

1.  The parties engaged in arbitration pursuant to a clause in their reinsurance contract(s) which stated: "Any dispute or difference hereafter arising with reference to the interpretation, application or effect of [the contracts] shall be referred to a Board of Arbitration consisting of two arbitrators and an umpire." Arbitration Clause ¶ 1, Reinsurance Contract No. 2757 (1961) ("Arbitration Clause"), cited in Letter to Panel dated May 27, 1997, Ex. 26 to Declaration of Joanna Shally, dated March 7, 2002 ("Shally Decl.").

2.  EMLICO refers herein to both Electric Mutual Liability Insurance Company, domiciled

The Panel denied Commercial Union's request for rescission of certain contracts pursuant to which Commercial Union reinsured a portion of EMLICO's liabilities to General Electric Company ("GE").

On February 15, 2002, Petitioner moved in this Court for an order permanently enjoining further arbitration and vacating part of the Award ("Petitioner's Motion").[3] On March 8, 2002, Respondents cross-moved for an order confirming the Award, imposing sanctions on Petitioner for "act[ing] unreasonably, vexatiously and in bad faith in [attempting] to enjoin the ongoing arbitration," and sealing the record (of the arbitration and court proceedings) ("Respondents' Cross–Motion"). On March 20, 2002, Petitioner submitted a reply ("Petitioner's Reply") and, on March 26, 2002, Respondents submitted a reply of their own ("Respondents' Reply").

**For the reasons set forth below, the Court (i) denies Petitioner's motion to enjoin the arbitration; (ii) denies Petitioner's motion partially to vacate the Award; (iii) grants Respondents' Cross–Motion to confirm the Award; (iv) denies Respondents' motion to impose sanctions; and (v) grants in part Respondents' motion to seal the record.**

## II. Background

EMLICO is a mutual insurance company which was formed in Massachusetts in 1927. Petitioner's Motion at 6. EMLICO's sole commercial policyholder is GE. *Id.* Commercial Union, an insurance company based in Massachusetts, issued contracts to EMLICO reinsuring a portion of EMLICO's liability to GE ("Reinsurance Contracts"). *Id.* at 5. Beginning in 1992, pursuant to the Reinsurance Contracts, EMLICO sought to recover from Commercial Union amounts it had paid to GE for asbestos and environmental clean-up claims. Shally Decl. ¶ 4.

EMLICO was domiciled in Massachusetts until June 1995, when, with the authorization of the Massachusetts and Bermuda insurance regulatory authorities, it reorganized its business operations and moved its domicile to Bermuda (i.e. it "re-domesticated"). Shally Decl. ¶ 5; Petitioner's Motion at 6–7. On October 20, 1995, EMLICO filed a "winding-up petition" in the Supreme Court of Bermuda ("Bermuda Court") declaring insolvency. *See* Winding–Up Petition dated October 20, 1995, Ex. 10 to Shally Decl. On September 12, 1996, the Bermuda Court appointed Respondents, as "Joint Permanent Liquidators," to manage EMLICO's "winding up" process. *See* Order of the Bermuda Court dated October 20, 1995, Ex. 11 to Shally Decl.

### Arbitration

In or about November 1996, Petitioner and Respondents agreed to submit their disputes under the Reinsurance Contracts to arbitration. *See* Letter to the Panel dated November 6, 1996, Ex. 24 to Shally Decl. Pursuant to the Arbitration Clause, the Panel "consisting of . . . executive officers of casualty insurance companies" was

in Massachusetts prior to June 1995, and Electric Mutual Liability Insurance Company, Ltd. (in Liquidation), domiciled in Bermuda as of June 1995.

3. On January 24, 2002, Respondents removed the case from Supreme Court, New York County to the Southern District of New York and, at the same time, requested that the record be sealed. *Id.* United States District Judge Richard Owen (sitting in Part I) issued a preliminary order stating that "until the issue of sealing the file herein is further considered and a ruling issued by the Judge of this court to whom the proceeding is assigned, further filings by either party in this proceeding shall be filed under seal." Part I Order dated January 24, 2002 ("Sealing Order"), Ex. 36 to Shally Decl.

appointed. Arbitration Clause ¶ 1. "One arbitrator [was] chosen by [Commercial Union] and the other by [EMLICO]. The umpire [was] chosen by the two arbitrators." *Id.* ¶ 2. On April 28, 1997, the parties signed a confidentiality agreement with respect to the arbitration proceedings. *See* Stipulation and Agreement of Confidentiality dated April 28, 1997, Ex. 28 to Shally Decl. ("Confidentiality Agreement").[4]

On July 1, 1997, the Panel determined that the arbitration should proceed in three phases. Interim Order of Panel dated July 1, 1997, Ex. A to Affidavit of Lawrence I. Brandes dated February 14, 2002 ("Brandes Aff."). In Phase I, the Panel would "hear Commercial Union's global defenses under the reinsurance contracts," and determine whether the "reinsurance contracts [were to] be rescinded." *Id.* In Phases II and III, the Panel would "determine [Commercial Union's] liability to EMLICO for asbestos [and] environmental clean-up claims." Shally Decl. ¶ 15.

By order dated October 31, 2001 ("Phase I Order"), denied Commercial Union's claim for rescission of the Reinsurance Contracts. Phase I Order, Ex. B to Brandes Affidavit, at 2. Commercial Union had argued that the Reinsurance Contracts should be rescinded principally because "redomestication to Bermuda and the formation of EMLICO, Ltd. were fraudulent. . . . [EMLICO] moved to Bermuda to avoid being liquidated in Massachusetts[,] because [EMLICO] and GE . . . believed a liquidation in Bermuda would be more advantageous to them and more disadvantageous to reinsurers." Petitioner's Motion at 2.

The Award states:

1) "While the Panel is in unanimous agreement that:

a) EMLICO deceived the Massachusetts Commissioner of Insurance and Bermuda authorities about its solvency, and

b) EMLICO moved to Bermuda to avoid being liquidated in Massachusetts, and

c) EMLICO intended to declare insolvency immediately after redomestication,

because this arbitration Panel is the final adjudicator, the Panel finds that CU is no worse off in Bermuda than in Massachusetts".

*Id.* at 1–2.

On January 26, 2002, the Panel issued a clarification of its Award stating in pertinent part:

When the Panel stated that it was the "final adjudicator" and that [Commercial

---

4. The Confidentiality Agreement states in pertinent part:

[N]o party shall directly or indirectly communicate, disclose, reveal, divulge or make known to any third party any Confidential Information. . . . The parties may use Confidential Arbitration Material for the purposes of the above-captioned arbitration and legal proceedings involving the confirmation, modification, or vacation of the award or ruling made by the Panel in this arbitration.
Confidentiality Agreement ¶¶ 2,3.

"Confidential Arbitration Material" is defined as:
[A]ll documents exchanged or produced, correspondence between the parties, briefs or memoranda submitted by the parties (including submissions made to the Panel prior to execution of this Stipulation and Agreement), depositions and transcripts of depositions, affidavits, awards and decisions by the Panel, and all hearings and transcripts of hearings, during or in connection with the above-captioned arbitration.
Confidentiality Agreement ¶ 1.

Union] was "no worse off", its intent was that since the ultimate economic impact of the overall dispute between EMLICO and [Commercial Union] is to be decided by the Panel as part of this arbitration, the panel will be in a position in latter phases to adjust for any differences that may have resulted from the deceitfully obtained change of jurisdiction from Massachusetts to Bermuda ... [w]hen the arbitration is completed, CU will end up in the same position as it would have been in had there been no redomestication .... So that not too much is made of the Panel's statement that it is the "final adjudicator", the Panel realizes that any decision it makes is subject to review by a Court.

Letter from Panel dated January 26, 2002, Ex. Z to Brandes Aff.

### III. Standard of Review

■ The scope of review of an arbitration award is generally "very narrowly limited," *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985), so as "to avoid undermining the twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.* 103 F.3d 9, 12 (2d Cir.1997) (quoting *Folkways Music Publishers v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Under the Federal Arbitration Act ("FAA"), "the validity of an award is subject to attack only on those grounds listed in 9 U.S.C. § 10, and the policy of the FAA requires that an award

be enforced unless one of those grounds is affirmatively shown to exist." *Wall Street Assocs. L.P. v. Becker Paribas Inc.,* 27 F.3d 845, 849 (2d Cir.1994).

### IV. Analysis

#### A. The Arbitration

■ Petitioner argues that Phases II and III of the arbitration should be enjoined because "[i]t is indisputable that EMLICO Ltd. obtained [the right to arbitrate]—indeed, EMLICO Ltd. even exists today—only because of, and as a direct result of, its ... immoral and illegal acts of defrauding the Massachusetts and Bermuda insurance regulatory authorities." Petitioner's Motion at 5. According to Petitioner, "it would clearly be against public policy ... to permit EMLICO Ltd. to enforce contractual rights it obtained solely by fraud." *Id.* at 17–18. Respondents counter that "EMLICO's rights [to arbitrate, among other things] under the reinsurance contracts arose when the contracts were signed in the 1960s. Those rights ... were unaffected by EMLICO's transfer of domicile." January 30, 2002 Letter at 2.[5]

Petitioner's claim that the arbitration should be enjoined rests, in part, on the idea that EMLICO, domiciled in Bermuda, is a new legal entity, distinct from the EMLICO domiciled in Massachusetts prior to 1995. This does not appear to be the case. The redomestication application was made pursuant to the Bermuda Companies Act 1981 ("Companies Act") which states that "the registration of the continuance of a foreign corporation ... shall not be deemed to ... create a new legal entity."

---

**5.** Respondents also argue that "[t]he Panel never found, either explicitly or implicitly, that the Joint Liquidators obtained rights un-

der the Reinsurance Contracts by fraud or by any immoral or illegal act." Respondents' Cross–Motion at 14.

Companies Act § 132E(1), Ex. 8 to Shally Decl.[6]

Petitioner has not demonstrated that the Reinsurance Contracts—which contain arbitration provisions and give rise to the arbitration proceedings were obtained by fraud. Indeed, Petitioner does not even appear to seek vacatur of the Panel's finding that "Commercial Union is not entitled to rescission of the reinsurance contracts, . . . because there is no lawfully recognized basis to do so." Petitioner's Motion at 4 n. 2. The Court perceives no basis in law (or public policy) to stop the arbitration process from going forward. As noted, the parties expressly agreed that "any dispute or difference . . . arising with reference to the interpretation, application, or effect of the [Reinsurance Contracts], or any part thereof, shall be referred to a Board of Arbitration" and that "[t]he decision in writing of the Board or a majority of said Board . . . shall be final and binding upon the contracting parties." Arbitration Clause ¶¶ 1,4. *See* Commercial Union's Pre–Hearing Reply Memorandum, Ex. 22 to Shally Decl., at 71 ("Commercial Union believed then, as it does now, that its only remedy for EMLICO's misconduct—including the redomestication—is in arbitration."); *Beth Israel Medical Ctr. v. Int'l Bd. of Teamsters*, No. 99 Civ. 9828, 2000 WL 1364367, at *3 (S.D.N.Y. Sept.20, 2000) (entering arbitration "reflects the parties' unambiguous intent to submit to, and be bound by, the arbitrator's decision."). And public policy strongly favors the "resolution of disputes through arbitration rather than litigation." *Chevron*

*USA, Inc. v. Consol. Edison Co. of N.Y.*, 872 F.2d 534, 537 (2d Cir.1989).

**B.   The Award**

■ Nor is there any reason to vacate the Award. Petitioner's argument that the portion of the Award which states that "th[e] arbitration Panel is the final adjudicator" should be vacated is unpersuasive for two reasons: first, it is not argued that EMLICO fraudulently obtained the right to arbitrate; and second, any misunderstanding with respect to the Panel's use of the phrase "final adjudicator" was cleared up by the Panel's letter of clarification stating, in part, that "the Panel realizes that any decision it makes is subject to review by a Court." *See* Letter from Panel dated January 26, 2002, Ex. Z to Brandes Aff.

Petitioner also claims that "it will be impossible for the panel to ensure that Commercial Union 'ends up in the same position as it would have been had there been no redomestication.'" Petitioner's Motion at 22. The Court does not necessarily agree but, rather, concurs with Respondents that "[l]iability under the Reinsurance Contracts was always to be determined by an arbitration panel of CU's choosing." *Id.*

Thus, Petitioner's application to vacate part of the Award is denied. Conversely, Respondents' motion for an order confirming the Award in its entirety is granted. *See* 9 U.S.C. § 9 ("The court must grant [an order confirming an award] unless the award is vacated, modified, or corrected . . .").

---

**6.** *See also* Respondents' Cross–Motion at 14 ("[T]he Panel [did not] conclude that there were two separate corporate entities or that the Massachusetts EMLICO transferred its reinsurance rights to a new Bermuda EMLICO . . . . In any event, the 'two companies' argument was . . . rejected by the Massachusetts'

Supreme Judicial Court [which] concluded 'a corporation can have a lawful existence in two jurisdictions.'") (quoting *In the Matter of Emlico, Ltd.*, No. 98–012 (Mass. Sup. Jud. Ct. (Suffolk County), Sept. 22, 1998), Ex. 20 to Shally Decl.).

## C. Sanctions

Respondents claim that Commercial Union "repeatedly and blatantly misrepresented the Panel's Phase I Order" and have made other allegations regarding the need for sanctions. (Petitioner's "claims for relief are based on a frivolous public policy argument that has no basis in law," and its "attempt to stay an incomplete arbitration ... has been made solely to delay" proceedings). Respondent's Motion for Sanctions, dated March 8, 2002 at 9.

An award of sanctions requires both "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes, and a high degree of specificity in the factual findings [by the court]." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986). Based upon this standard, the Court does not believe that sanctions are warranted at this time. *See Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994) ("Rule 11 sanctions should be imposed with caution"); *Veliz v. Crown Lift Trucks*, 1989 WL 61829, at *10 (E.D.N.Y. June 1, 1989) ("Rule 11 [sanctions] must be deployed with restraint"). *See also Int'l Telepassport Corp. v. USFI, Inc.*, 89 F.3d 82, 86 (2d Cir.1996) (affirming denial of sanctions where motion to vacate arbitration award was "barely non-frivolous"); *AT & T Corp. v. Public Serv. Enters. of PA., Inc.*, No. 98 Civ. 6133, 1999 WL 672543, at *7 (S.D.N.Y. Aug.26, 1999) (" 'It is far from clear ... where to draw the line' when determining [whether an arbitration award contravenes public policy].") (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 825 (2d Cir.1997)).

## D. Sealing the Record

■ Respondents argue, among other things: (i) that "the arbitration is conducted pursuant to a confidentiality agreement and the documents produced ... are highly sensitive," Respondents' Reply at 3, (ii) disclosure of the Panel's findings would result in "[t]he gaining of an unfair advantage by other potential adversaries and the risk of misleading the public", *id.*, and (iii) there is a pending sealing order issued by the Panel.[7]

In *DiRussa*, cited by Respondents, the U.S. Court of Appeals for the Second Circuit approved "sealing the file" where "a confidentiality agreement entered into by the parties during the discovery phase of the arbitration required that the papers ... submitted to the district court be placed under seal." 121 F.3d at 826. The district court initially sealed the record by "order[ing] the parties to attempt to agree as to which documents properly fell within the protection of the agreement," *id.*, but later ruled that "it was not feasible to attempt a partial unsealing within the context of the parties' confidentiality agreement." *DiRussa v. Dean Witter Reynolds, Inc.*, 936 F.Supp. 104 (S.D.N.Y.1996). The district court ultimately held that "the file would remain under seal with the exception of the court's orders and opinions in the case." *DiRussa*, 121 F.3d at 826.

Petitioner responds that (i) "[t]he Confidentiality Agreement does not require the parties ... to seek to seal court proceedings," *id.* ¶ 4, and (ii) "[r]einsurance arbitrations—in general—and this arbitration in particular—simply do not include the type of sensitive or proprietary informa-

---

7. "[T]he parties are not to make any further public statements as respects this arbitration other than its existence .... EMLICO, the Joint Liquidators, and CU are to advise everyone who represents them in this matter that this arbitration is a confidential proceeding as per the parties Confidentiality Agreement and the Panel's Order. They are to advise one and all that confidential nature of these proceedings must be respected." Panel's Interim Order dated May 23, 1998 ("Panel's Sealing Order"), Ex. 30 to Shally Decl.

tion that would warrant the extraordinary step of sealing an entire proceeding." Petitioner's Reply at 9.[8]

█ Judicial documents are presumptively available to the public. *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995). The presumption "is at its strongest when the document[s] in question ... ha[ve] been submitted as a basis for judicial decision making." *Greater Miami Baseball Club Ltd. P'ship v. Selig*, 955 F.Supp. 37, 39 (S.D.N.Y.1997); *U.S. ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F.Supp.2d 458, 465 (S.D.N.Y.2002) ("the presumption in favor of public access is at its peak [when] the documents at issue were submitted to and used by the [c]ourt in rendering a[d]ecision"); *see also Amodeo*, 71 F.3d at 1049.[9] "Where such documents are usually filed with the court and are generally available, the weight of the presumption [of access] is stronger than where filing with the court is unusual or is generally under seal." *Id.*[10]

Respondent has not demonstrated why the entire record here should be sealed. At a minimum, the Court's orders and decisions should be available for public review.[11] Respondents have had "a fair opportunity ... to respond to" Petitioner's allegedly derogatory statements. *Amodeo*, 71 F.3d at 1051. And, Respondents do not identify with particularity any "unfair advantage" that would result from disclosure of particular documents.

## V. Conclusion

For the foregoing reasons, (i) Petitioner's motion to permanently enjoin the arbitration is denied; (ii) Petitioner's motion partially to vacate the Award is denied; (iii) Respondents' cross-motion to confirm the Award is granted; (iv) Respondents' motion to impose sanctions is denied; and (v) Respondents' motion to maintain the record under seal is granted in part.

### *ORDER ON MOTION TO MODIFY DECISION*

Following the issuance of the Court's Decision and Order, dated December 18,

---

8. The parties entered into a second confidentiality agreement, dated February 22, 1999, which stated that "if a filing is made in court which contains Confidential Information or Redomestication documents, the moving party shall request the court that the file in the case be under seal." Confidentiality Agreement and Order dated February 22, 1999, Ex. 29 to Shally Decl. at 17. ("Heightened Confidentiality Agreement"). Petitioner asserts, and Respondents do not dispute, that the Heightened Confidentiality Agreement only "govern[s] the [Redomestication] documents and information gleaned from them" and "none of the papers submitted by [Petitioner] in this Court, or earlier, in state court, contain [Redomestication] Documents or Confidential Information [as defined]." Finnegan Aff. ¶¶ 7,10.

9. The presumption is weaker if the document plays "no role in the performance of Article III functions, such as those passed between

the parties in discovery." *Amodeo*, 71 F.3d at 1050.

10. "The party requesting that a matter be filed and kept under seal bears the burden of showing why the material should be kept from public view." *Kalmanovitz*, 186 F.Supp.2d at 465.

11. As to other documents and court submissions, the parties are directed in good faith to meet and confer to determine which materials are subject to the Confidentiality Agreement. *See Amodeo*, 71 F.3d at 1050 ("Documents that play no role in the performance of Article III functions 'stand on a different footing than ... a motion filed by a party seeking action by the court,' or indeed, than any other document which is presented to the court to invoke its powers or affect its decisions."). In the event of continued dispute over confidentiality, the parties shall submit the issue to arbitration.

2002 ("Decision"), which determined, among other things, that "orders and decisions should be available for public review," Respondents submitted a motion, on December 19, 2002, requesting modification of the Decision "by excising text describing the underlying private arbitration award." Respondents' Motion dated December 19, 2002 at 1. On December 24, 2002, Petitioner opposed Respondents' Motion, arguing, among other things, that "Respondents have not satisfied their burden of demonstrating that the Order should be amended" and that "excising the arbitral finding ... would remove the factual predicate of the Petition, eviscerate the context of the Order and render it misleading to the public." Petitioner's Opposition to Respondents' Motion dated December 24, 2002 at 1–2.

Upon a review of the parties submissions and applicable legal authorities, the Court perceives no basis to reconsider and/or modify its Decision. The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995); *see* Federal Rule of Civil Procedure 59(e). None are presented here.

The Court is, if anything, more convinced, upon Respondents' Motion, that the policy of public access to proceedings of the Court, including its decisions and orders, is a wise one and should be adhered to here. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 825 (2d Cir.1997) (rejecting sealing of the court's decisions and orders). A strong presumption of public access attaches based "on the need for federal courts ... to have a measure of accountability and for the public to have confidence in the administration of justice." *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.1995).

### ORDER

Respondents' application for modification of the Court's Decision and Order dated December 18, 2002 is denied.