378 F.3d 204
 COMMERCIAL UNION INSURANCE COMPANY, Petitioner-Appellant,
v.
David E.W. LINES, Christopher Hughes, Peter C.B. Mitchell, as Joint Liquidators of Electric Mutual Liability Insurance Company, Ltd. (in Liquidation), Respondents-Appellees.
 Docket No. 03-7048.
 United States Court of Appeals, Second Circuit.
 Argued: May 13, 2004.
 Last brief filed: May 27, 2004.
 Decided: August 5, 2004.
 
 Appeal from the United States District Court for the Southern District of New York, Richard M. Berman, J.
 Mark A. Rabinowitz (Christopher D. Mickus, of counsel), Neal, Gerber & Eisenberg LLP, Chicago, IL (William F. Patry, William Nix, of counsel, Baker Botts LLP), for Petitioner-Appellant.
 Thomas Martin (Joanna Shally, on the brief), Shearman & Sterling LLP, New York, NY, for Respondents-Appellees.
 Before: FEINBERG and CABRANES, Circuit Judges.*
 FEINBERG, Circuit Judge.
 
 
 1
 Petitioner Commercial Union Insurance Company ("Commercial Union")[1] challenges a December 2002 order of the United States District Court for the Southern District of New York growing out of an arbitration proceeding between petitioner and Electric Mutual Liability Insurance Company, Ltd. ("EMLICO"). EMLICO is in liquidation and respondents are its three individual Joint Liquidators. The district court's order, among other things, (1) denied petitioner's motion to permanently enjoin further arbitration; (2) denied petitioner's motion to vacate part of an award rendered by the arbitration panel; and (3) granted respondents' cross-motion to confirm the award in its entirety. Petitioner Commercial Union claims that the district court's decision must be reversed because EMLICO obtained a change in governing law through fraud and deceit that benefitted it in arbitration.
 
 
 2
 Commercial Union, a reinsurance company, from 1975 to 1979 issued several reinsurance contracts to EMLICO, a mutual insurance company organized in Massachusetts. Commercial Union is also the successor-in-interest to Employers Surplus Lines Insurance Company, which issued reinsurance contracts to EMLICO from 1959 to 1967. These reinsurance contracts reinsured a portion of EMLICO's liability under policies EMLICO issued to General Electric Company ("GE"), EMLICO's only commercial policyholder.
 
 
 3
 Beginning in 1992, GE sought to recover from EMLICO its asbestos and environmental clean-up costs; in turn, EMLICO sought to recover these costs from Commercial Union under the reinsurance contracts. Pursuant to the arbitration clauses in those contracts, it appears from the record and from supplemental letter briefs submitted to us at our request that the parties thereafter mutually took steps to proceed to arbitration. Then, in February 1995, EMLICO submitted to the Massachusetts Commissioner of Insurance a reorganization proposal that included a transfer of domicile (redomestication) to Bermuda.
 
 
 4
 According to Commercial Union, EMLICO accomplished the redomestication through fraud. Commercial Union avers that EMLICO misrepresented that it was solvent to the Massachusetts Commissioner of Insurance, the Bermuda Registrar of Companies and the Bermuda Minister of Finance in order to accomplish redomestication, and then shortly after redomesticating, declared insolvency and initiated liquidation proceedings. EMLICO contends that the relevant regulatory bodies were aware that future insolvency was a possibility. In any case, Commercial Union and EMLICO agreed to arbitrate this fraud issue as well.
 
 
 5
 The parties proceeded to arbitration in November 1996 — almost a year after EMLICO filed a "winding-up" petition in the Bermuda courts — with the same arbitrators who had earlier been chosen.[2] The arbitrators decided to resolve the disputes between Commercial Union and EMLICO in three phases. Phase I would focus on Commercial Union's claim for rescission of the reinsurance contracts based, in part, on the ground that EMLICO fraudulently redomesticated to Bermuda to benefit GE and to the detriment of EMLICO's reinsurers. If the arbitrators decided not to rescind the contracts, Phases II and III would proceed. In Phase II, the arbitrators would decide what amount, if any, Commercial Union was obligated to pay EMLICO for asbestos liabilities. In Phase III, the arbitrators would consider what amount, if any, Commercial Union was obligated to pay for environmental liabilities.
 
 
 6
 After more than four years of arbitration proceedings, the arbitration panel issued an award in Phase I on October 31, 2001, denying Commercial Union's claims for rescission of the reinsurance contracts. The award stated, among other things, that while the Panel unanimously[3] agreed that:
 
 
 7
 a) EMLICO deceived the Massachusetts Commissioner of Insurance and Bermuda authorities about its solvency, and
 
 
 8
 b) EMLICO moved to Bermuda to avoid being liquidated in Massachusetts, and
 
 
 9
 c) EMLICO intended to declare insolvency immediately after redomestication,
 
 
 10
 because this arbitration Panel is the final adjudicator, the Panel finds that [Commercial Union] is no worse off in Bermuda than in Massachusetts.
 
 
 11
 On January 26, 2002, the Panel issued a clarification of its award, stating in pertinent part:
 
 
 12
 The deceit that the Panel found was in EMLICO's redomesticating to Bermuda so that its liquidation proceedings could be conducted in Bermuda rather than in Massachusetts.
 
 
 13
 When the Panel stated that it was the "final adjudicator" and that [Commercial Union] was "no worse off," its intent was that since the ultimate economic impact of the overall dispute between EMLICO and [Commercial Union] is to be decided by the Panel as part of this arbitration, the Panel will be in a position in latter phases to adjust for any differences that may have resulted from the deceitfully obtained change of jurisdiction from Massachusetts to Bermuda.... [W]hen the arbitration is completed, [Commercial Union] will end up in the same position as it would have been in had there been no redomestication.... So that not too much is made of the Panel's statement that it is the "final adjudicator," the Panel realizes that any decision it makes is subject to review by a Court.
 
 
 14
 In January 2002, Commercial Union brought the instant suit in the district court to enjoin further arbitration and to vacate that part of the award that acknowledged the panel was the "final adjudicator." Respondents cross-moved for, among other things, an order confirming the award. After the district court denied Commercial Union's motion and affirmed the arbitration award,[4] Commercial Union appealed to this court.[5]
 
 
 15
 Commercial Union argues strenuously to us that because the arbitrators found that EMLICO obtained a change of jurisdiction for liquidation purposes by deceit, whatever advantages accrue to EMLICO from liquidating in Bermuda should be denied. Commercial Union also contends that the arbitrators' conclusion that EMLICO had engaged in deceptive practices and had redomesticated to take advantage of the laws of Bermuda mandated rescission of the reinsurance contracts. To allow arbitration to continue, Commercial Union argues, is to allow EMLICO to benefit from its deception.
 
 
 16
 More specifically, Commercial Union argues that by redomesticating, EMLICO took advantage of Bermuda's more favorable liquidation procedures that in turn prejudiced Commercial Union's rights in arbitration. For example, Commercial Union contends that in a Massachusetts liquidation, the liquidator would be an independent public official, while under Bermuda law the Joint Liquidators are controlled by EMLICO's only creditor, GE. Commercial Union also claims that under Massachusetts insolvency rules, the estate of an insolvent insurer cannot recognize contingent unmatured claims, while under Bermuda law, EMLICO can estimate and recognize such claims. In response to these claims of prejudice, respondents emphasize that the arbitrators made clear that they would eliminate any advantage EMLICO may have gained by putting Commercial Union "in the same position as it would have been in had there been no redomestication." Commercial Union argues, however, that this is impossible, given that the Joint Liquidators have taken and will take positions different from those a neutral liquidator such as the Massachusetts Commissioner of Insurance would take. Commercial Union also contends that the results of Phase II of the arbitration, in which the Joint Liquidators were awarded over $36 million under the reinsurance contracts, show that EMLICO and its primary policyholder GE clearly benefitted from the redomestication. Commercial Union insists that the testimony during those proceedings revealed that under Massachusetts law, Commercial Union would have been responsible for only $191,000.
 
 
 17
 Before proceeding to address the issues thus raised, we note that this is a highly unusual case. Most fraud cases in the arbitration context involve charges of either fraud in the inducement of the contract containing the arbitration clause — here, the reinsurance contracts — or fraud in the procurement of the arbitration award. In the former type of case the question is usually whether it is the court or the arbitration panel that should decide whether there has been fraud in the inducement. We have held that for a court to decide the issue there must be a close relationship between the fraud and the arbitration clause in particular. See Garten v. Kurth, 265 F.3d 136, 143 (2d Cir.2001); Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 667-68 (2d Cir.1997). In the instant case, the underlying contracts were executed decades ago and Commercial Union does not argue that there was fraud at that time. In addition, the question of fraud here was actually submitted to the arbitration panel, and the panel found deceit.
 
 
 18
 In the other typical kind of case, the claim is that an arbitration award (rather than the contract containing the arbitration clause) was procured by fraud. This type of case is usually based upon fraud that the allegedly injured party did not know about at the time of the arbitration. See, e.g., Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir.1988). The instant case does not fall into this category either since the injured party — and indeed the arbitrators — were all aware of the alleged fraud and, as just noted, the arbitrators actually decided that EMLICO's redomestication had been accomplished by deceit.
 
 
 19
 Thus, we are faced with a case without clearly governing precedent, where the analysis essentially pits the public policy favoring arbitration, see, e.g, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 147 (2d Cir.2004), against the judicial policy of refusing to "lend [the court's] power to assist or protect a fraud," Kitchen v. Rayburn, 19 Wall. 254, 86 U.S. 254, 262, 22 L.Ed. 64 (1873). Here, the arbitrators have found fraud, and we are concerned that if we confirm an arbitration award under which EMLICO was allowed to benefit from this fraud, we would violate the principle, "fundamental in our jurisprudence," that "a wrongdoer shall not be permitted to profit through his own wrongdoing." Perma Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134, 151, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968) (Marshall, J., concurring in the result). Thus, we believe that it might be improper for this court to affirm (and thus, in effect, enforce) an arbitration award if, in fact, Commercial Union was prejudiced by EMLICO's deceitful redomestication. See Kitchen, 86 U.S. at 263, 22 L.Ed. 64 (noting that the powers of the court "can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage") (internal citation omitted).
 
 
 20
 The district court did not consider this "well defined" and "dominant" policy,[6] W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), meant to protect the integrity of the courts.[7] See Kitchen, 86 U.S. at 263 (noting that aiding a party who has engaged in fraud "would make [the] court the abettor of iniquity"); cf. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).[8] Moreover, the district court, in reviewing the validity of the arbitral award in Phase I, did not consider whether liquidation in Bermuda could affect the results of the arbitration. Finally, the district court did not have the opportunity to consider Commercial Union's allegations with respect to Phase II before the court issued its December 2002 decision because Phase II of the arbitration proceedings had not yet been completed. Only later, in September 2003, did Commercial Union petition to vacate the Phase II award. That litigation was stayed pursuant to orders of this Court and has not yet been adjudicated in the district court.[9]
 
 
 21
 Under these circumstances, we believe the correct approach on this appeal is to vacate the district court's order of December 18, 2002, and send the case back to the court for reconsideration of the Phase I award (with the result in Phase II before it). In conducting its review, the district court may, as it finds appropriate after further proceedings, adopt or modify the now-vacated order currently before us on this appeal. But we caution the district court that it must address whether liquidation in Bermuda — which flowed from redomestication in Bermuda — could affect the results of the arbitration, and whether confirming the arbitral awards in Phases I and II would violate the court's equitable principles.
 
 
 22
 We therefore vacate the district court's order of December 18, 2002, and remand for further proceedings consistent with this opinion. Because the district court judge has ordered the transfer of this case to another judge, the case on remand should be assigned to the judge who will consider the further proceedings involving Phase II. In light of our vacatur of the order of December 18, 2002, the question regarding the recusal of the first judge is moot.
 
 
 23
 Case vacated and remanded for further proceedings.
 
 
 
 Notes:
 
 
 *
 The Honorable Mark R. Kravitz of the United States District Court for the District of Connecticut, originally sitting by designation, has recused himself from hearing and consideration of this appeal. Pursuant to Second Circuit Local Rule 0.14(b), the matter is being decided by the two remaining members of the panel
 
 
 [1]
 Since the initiation of this proceeding, Commercial Union apparently has become OneBeacon America Insurance Company. Because the company is called "Commercial Union" in the caption, the district court's order and the briefs, we will use that name throughout this opinion
 
 
 [2]
 Apparently, two of the three arbitrators had been appointed prior to EMLICO's redomestication. After that event, these two arbitrators selected a third
 
 
 [3]
 We note that while the panel unanimously agreed that EMLICO accomplished its redomestication by deceit, the decision not to rescind the contracts was made by a majority (two out of three) of the arbitrators
 
 
 [4]
 During the period between the district court's decision and argument on this appeal, the arbitrators issued an award in Phase II of the arbitration proceedings. The award in Phase II was issued in June 2003. Commercial Union petitioned in the Southern District to vacate the Phase II award in September 2003. See infra page 11
 
 
 [5]
 In conjunction with this appeal, respondents asked permission to file the public copy of their brief to this Court in redacted form. The motion is hereby granted
 
 
 [6]
 The district court did note, in the context of whether the original underlying contracts should be rescinded in view of the fraud, that it "perceive[d] no basis in law (or public policy) to stop the arbitration process from going forward."Commercial Union Ins. Co. v. Lines, 239 F.Supp.2d 351, 356 (S.D.N.Y.2002). However, the district court did not address whether public policy considerations were implicated in confirming an award where fraud had been found by the arbitration panel.
 
 
 [7]
 In this sense, the instant case is also unusual because it is not the typical "public policy exception" case. SeeInt'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 715-16 (2d Cir.1998); Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 45-47 (2d Cir.1997). In such cases, the court is usually deciding whether confirming an arbitration award would violate public policy manifest in laws and regulations, as for example, the regulations of the Nuclear Regulatory Commission, see Niagara Mohawk Power, 143 F.3d at 718. Here, the arbitration panel has already found fraud. The question is whether confirming the award under such circumstances would violate the court's own well-defined equitable principles.
 
 
 [8]
 InMisco, the Court explained that:
 A court's refusal to enforce an arbitrator's award ... because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. That doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act.
 484 U.S. at 42 (internal citations omitted).
 
 
 [9]
 The stay imposed by those orders is hereby lifted